UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:04CV-102-R

EDWARD R. KNOUS and
JANET KNOUS                                                                                                    PLAINTIFFS

v.

CONAGRA FOODS, INC.                                                                                        DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's, ConAgra Foods, Inc. ("ConAgra"), renewed motion for summary judgment (Dkt. # 93). The Plaintiffs, Edward and Janet Knous ("Knous's") have responded (Dkt. #99), and ConAgra has replied to that response (Dkt. #105). This matter is now ripe for adjudication. For the following reasons, the Defendant's motion for summary judgment is **DENIED**.

## BACKGROUND

This case arises out of an injury sustained by Plaintiff Edward Knous ("Mr. Knous"), a truck driver, when he fell out of the truck he was driving while stopped at a weigh station in Lyon County, Kentucky. At the time, the truck contained frozen chicken from ConAgra's plant, which Mr. Knous was transporting. The tractor-trailer he was driving was owned by Henderson Trucking ("Henderson"); his employment with Henderson was structured as a leased employee arrangement between Staffing Concepts and Henderson. Mr. Knous brought suit against ConAgra seeking compensation for injuries arising out of this incident under the theory that ConAgra negligently exposed him to carbon dioxide, which caused his fall from the truck and

1

his resulting paralysis. (Dkt. # 2). ConAgra's summary judgment motion argues that Mr. Knous has failed to produce sufficient evidence as to both the duty and proximate cause elements of his negligence claim. The motion makes no reference to the loss of consortium claim brought by Janet Knous.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d

1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)."  *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

In Kentucky, a negligence claim "requires proof that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury."  *Pathways, Inc. v. Hammons*, 113 S.W.3d 85 (Ky. 2003) (*citing Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992)).  ConAgra challenges both the first and third elements.

As to the duty element, Kentucky law imposes a "universal duty of care" which provides that "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury."  *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W. 2d 328, 332 (Ky. 1987).  To meet the first element of the negligence *prima facie* case, then, a plaintiff must establish that the harm he suffered was reasonably foreseeable.  This determination is a pure question of law for the court.  *Mullins*, 839 S.W.2d at 248.  Kentucky courts have said that it is "but a conclusion of whether a plaintiff's interests are entitled to legal protection against the defendant's conduct."  *Sheehan v. United Services Auto. Ass'n*, 913 S.W.2d 4, 6 (Ky. Ct. App. 1996).  This is "essentially a policy determination."  *Id.*, citing *Mullins*, 839 S.W.2d at 248.

ConAgra first argues that there is no duty to warn in this case because the harm suffered by Mr. Knous was not reasonably foreseeable.  For this proposition, ConAgra cites *Scott v.*

*Oscar Ewing Dairy Co.*, in which the plaintiff, a twelve-year-old boy, was given dry ice discarded by the defendant's truck driver.

> He broke the ice into small pieces and put it in a bottle in which he had also put some water. Another young boy who was with him put a cap on the bottle and they threw the bottle into some grass a short distance away, expecting that the vaporizing of the ice in the water would blow the top off the bottle. This did not happen, however, and after a few minutes the plaintiff went over to pick up the bottle, whereupon it exploded in his face.

317 S.W.2d 477, 478 (Ky. 1958). The trial court in that case directed a verdict in favor of the defendant, which the Kentucky Supreme Court upheld, saying that in the absence of evidence that the defendant had reason to know of "the propensity of children to amuse themselves with the explosive characteristics of dry ice," it did "not believe such propensity is a matter of such common knowledge as to come within the scope of judicial notice." *Id.* at 480.

In the context of the foreseeability determination which Kentucky negligence law requires the Court to make, this case is of limited usefulness. This is primarily because, for purposes of a policy analysis, the child in *Scott* and Mr. Knous are not similarly situated *vis a vis* the commercial dry ice user. The *Scott* court was concerned with principles of attractive nuisance and the effect of "unusual or extraordinary uses" of ordinary products. *Id.* Mr. Knous is, of course, not a child, and the evidence indicates that his actions were not "unusual or extraordinary." Accordingly, this case does not stand for the proposition there was no duty to warn in the instant matter.

The Defendant next argues that there is no requirement to warn about dry ice under transportation laws. In particular, ConAgra contends that because Kentucky abides by the Federal Motor Carrier Safety Regulations, and because those regulations do not require a warning about dry ice, no such duty to warn should exist in this matter. However, the

4

Defendant's reasoning that a lack of warning requirement within federal regulations suggests that there is not a duty to warn in state law negligence matter is without basis. Though courts may look to statutes in order to determine a standard of care under a negligence *per se* action, a lack of a warning in a statute does not imply that no duty to warn exists. *See Hargis v. Baize*, 168 S.W.3d 36, 45 (Ky. 2005). The Defendant has cited no cases or statutes that support that proposition, and on page 12 of its motion, it states that there is no regulatory provision that provides a duty element in this case. In addition, ConAgra's reliance on the Sixth Circuit Court of Appeals case of *Fisher v. Ford Motor Co.* is misguided, as that opinion dealt with a national policy regarding air bags in automobiles under the National Traffic and Motor Vehicle Safety Act, and not with dry ice or a corresponding duty to warn under a state law negligence claim. *Fisher v. Ford Motor Co.*, 224 F.3d 570, 573-74 (6th Cir. 2000). Accordingly, this argument does not demonstrate that ConAgra did not have a duty to warn Mr. Knous about the dry ice.

The Defendant also argues that under common law rule of foreseeability, ConAgra did not have a duty to warn. ConAgra references the Sixth Circuit Court of Appeal's reliance on the famous case of *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), in the case of *James v. Meow Media, Inc.*, 300 F.3d 683, 690 (6th Cir. 2002). In *James*, the Court cited *Palsgraf* in as far as setting out a general standard of foreseeability, noting that in Kentucky, the determination of an existence of a duty of care to a plaintiff "is a pure question of law for the court." *James* at 691.

In making its argument that the injury to Knous was not foreseeable, ConAgra relies upon the case of *Greer v. Curry*, 448 S.W.2d 365 (Ky. 1969). In that case, the Kentucky Supreme Court confronted a case in which a farmhand had been asked to climb a ladder attached

to the outside of a silo containing cut corn and cane and look into the silo to determine the level of silage. *Id.* After doing so, the plaintiff became ill and was hospitalized for forty-two days. *Id.* With the support of medical testimony, the plaintiff argued that "the silage ... had produced nitrogen dioxide, a poisonous gas commonly known as silo gas, which had caused [the plaintiff's] injuries." *Id.* Ultimately, the court held that there was "no basis in the instant case for charging [the defendant] with reasonable foreseeability of any injury as a result of merely sending Curry to look into the silo to ascertain the amount of silage it would hold." *Id.* at 367. In so holding, the court quoted at length the general discussion of foreseeability contained in American Jurisprudence. 38 Am. Jur. 2d *Negligence* § 23, 24 (1964). However, the court did not explain what persuaded it that the harm was not foreseeable, in that it did not explicitly engage in the policy analysis later described by the *Mullins* and *Sheehan* courts. However, it notes that the plaintiff argued that the defendant's superior knowledge (of farming in general and of grain fermenting specifically) placed upon him the burden of warning the less-experienced plainitff of the danger. 448 S.W.2d at 366. It is unclear from the opinion whether the court did not believe that the defendant had such specialized knowledge, or simply did not believe that, even with such specialized knowledge, the defendant could reasonably have foreseen the plaintiff's injury. However, the court's characterization of the defendant as someone who "had much experience in filling silos" indicates that it was probably the latter. *Id.* at 366. In any case, because the court did not set forth the policy considerations that formed the basis of its conclusion, it is also of limited usefulness in the instant matter.

ConAgra also cites *Paducah Battery Co. v. Edgar*, in which the Kentucky Court of Appeals directed a verdict for an employer in a negligence case resulting from an employee's

development of a skin condition as a result of her use of mineral spirits while cleaning batteries at the factory where she worked. 265 S.W.2d 455 (Ky. Ct. App. 1954). In so doing, the court said:

> [w]e find no proof in this record that the substance used was inherently dangerous. It is a standard product which has long been on the market; the experience of the employer and experience generally have demonstrated that the normal use of mineral spirits does not result in injury to the person using it. The employer should not be charged with knowledge of danger and a duty to warn that a substance is likely to cause injury and destruction when, [in] fact, it is not.

*Id.* at 457.

In the instant matter, the record indicates that the same cannot be said for dry ice, because several potential safety issues are commonly known and were apparently known to ConAgra, as evidenced by the precautions taken by ConAgra in its handling of dry ice. The deposition testimony of Joseph Waggoner, currently the safety manager at the ConAgra plant in question, indicates that (1) employees who handle dry ice are required to wear "PPE" or "personal protective equipment," which are essentially thermal gloves to prevent extreme cold burn; and (2) the air inside the plant's "stack-off" area, where the dry ice is spread over the product, is constantly monitored by an alarm system that detects dangerous levels of carbon dioxide. (Dkt. # 57, Attachment # 1, at 21-24). Mr. Waggoner testified that, if the alarm is triggered by a high carbon dioxide level, they "immediately turn on exhaust fans, exhausting it out of the building into the atmosphere" and evacuating employees, if necessary. (*Id.* at 26). Both of these facts indicate that ConAgra knew that, absent these precautions, dry ice would probably be harmful to those who came in contact with it. Mr. Davenport, then a supervisor in ConAgra's shipping department, himself describes an experience where he felt some ill effects of carbon dioxide inhalation after an exposure. (Dkt. # 57, Attachment # 2, at 15). Therefore, the rule from

7

*Paducah Battery* cannot apply here, because it is generally known, and ConAgra specifically knew, that dry ice can cause injury.

A number of cases applying Kentucky law address the question of duty in the context of shipping in determining whether the shipper or the carrier has the duty to load cargo in a reasonably safe manner. Both parties rely upon *Rector v. General Motors Corp.*, in which the Sixth Circuit addressed a case in which a truck driver "slipped and fell on small automotive gears ... which had been packaged in oil and which had spilled to the floor of a tractor trailer he had driven to Harrodsburg[,] [Kentucky] from Dayton, Ohio." 963 F.2d 144, 145 (6th Cir. 1992). Ultimately, the Sixth Circuit found that the defendants-shippers owed no duty to the plaintiff (the carrier's employee), but rather that the duty to ensure that the cargo was loaded in a reasonably safe manner rested with the carrier. In so holding, the court relied upon a number of different authorities, both primary and secondary; however, on the whole the court took a pragmatic approach. It noted that "...the undisputed evidence in the record shows ... that the carrier ... had loaded the gears into the truck which [plaintiff] drove, that [plaintiff] did not inspect the load before he drove the truck from Dayton to Harrodsburg, and that [plaintiff] was injured only after making that trip." *Id.* at 147. It also noted:

> Defendants also point out that federal regulations state that "the driver of a truck or truck tractor must ... [a]ssure himself that" his vehicle's cargo is properly distributed and adequately secured. 49 C.F.R. § 392.9(b) (1991). While not dispositive, this regulation is indicative of the proper allocation of duty as between a common carrier and a shipper for the proper loading of goods.

*Id.* The evidence in this case is undisputed that ConAgra had loaded the goods and the dry ice into the truck, and that Mr. Knous did in fact inspect the truck before driving away with it - in fact, of course, this inspection forms the basis of his negligence claim, because it was during this

inspection that Mr. Knous was exposed to the carbon dioxide.

Other Kentucky cases dealing with a duty to warn a truck driver about dangers presented by the truck turn on the issue of whether the driver knew or reasonably should have known about the danger. *Cardwell v. Haycraft*, 268 S.W.2d 916 (Ky. 1954) (no duty to warn of danger of thrusting his arm between bed and frame of truck because evidence was that plaintiff knew the action was dangerous); *Leslie Four Coal Co. v. Simpson*, 333 S.W.2d 498 (Ky. 1960) (no duty to warn of danger of earthslide at strip mine where driver knew of previous slides at the same location and where there were no hidden dangers). ConAgra, relying on *Rector* and *Smith v. Northern Dewatering, Inc.*, 2004 U.S. Dist. LEXIS 2648 (D. Minn. 2004), argues that Mr. Knous should have known about the danger posed to him by the dry ice in the truck because the bill of lading which he received stated that the truck contained "CO2" and because Henderson Trucking, Mr. Knous's employer, "is in the business of hauling perishable food products." (Dkt. # 41, at 14). However, there is no evidence in the record to support this link; although Mr. Knous's deposition testimony indicated that a significant portion of the other loads he drove for Henderson Trucking were refrigerated, he did not know how many of those loads, if any, contained dry ice. (Dkt. # 53, at 39). Mr. Knous testified that many of the loads were cooled by electronic refrigeration units, and that maintaining those units and monitoring the temperature inside the trailer during the trip was a part of his responsibility. (*Id*. at 33.) ConAgra also does not introduce evidence in support of the assertion that the dangers posed by carbon dioxide inhalation were known to Mr. Knous or are generally known in the trucking industry such that the Court could conclude that a reasonable man in Mr. Knous's position would have known that opening the trailer exposed him to that risk.

Therefore, in light of ConAgra's position of (1) superior knowledge of the effects of carbon dioxide and (2) control over the loading of the trailer, the Court believes that public policy weighs in favor of imposing a duty of ordinary care on ConAgra to prevent harm to Mr. Knous resulting from carbon dioxide inhalation. The Plaintiffs' interests are entitled to legal protection from the Defendant's alleged conduct. Clearly, this is all for the jury to decide.

The Defendant's final argument that the Plaintiffs cannot show causation is dependent upon the Court's decision in a *Daubert* motion filed by ConAgra (Docket #94). The Court has determined that two (2) of the Plaintiffs' expert witnesses may testify about causation in this matter. Accordingly, the Defendant's causation argument fails.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **DENIED**. An appropriate order shall issue.